WARNER, Judge,
dissenting with opinion.
The majority’s opinion is premised on its conclusion that Florida follows the doctrine of lex loci contractus in all contract conflicts of law questions. It cites Sturiano v. Brooks, 523 So.2d 1126 (Fla.1988) for that proposition. However, Sturiano involved an automobile insurance policy and the question certified to the court was:
DOES THE LEX LOCI CONTRACUS RULE GOVERN THE RIGHTS AND LIABILITIES OF THE PARTIES IN DETERMINING THE APPLICABLE LAW ON AN ISSUE OF INSURANCE COVERAGE, PRECLUDING CONSIDERATION BY THE FLORIDA COURTS OF OTHER RELEVANT FACTORS, SUCH AS THE SIGNIFICANT RELATIONSHIP BETWEEN FLORIDA AND THE PARTIES AND/OR THE TRANSACTION?
Id. at 1128. The decision of the supreme court was limited in its application to automobile insurance policies:
For these reasons, we answer the certified question concerning conflict of laws in the affirmative, limiting that answer to situations involving automobile insurance policies. (emphasis supplied)
Id. at 1130. In concurring with the result, Justice Grimes expressed his inclination to adopt the significant relationship test with respect to most contracts, although he noted that even under the significant relationship test the automobile policy in question in Stu-riano would be construed in accordance with the law of the place of contracting.
In Shapiro v. Associated Intern. Ins. Co., 899 F.2d 1116 (11th Cir.1990), the Eleventh Circuit, construing what it believed the law of Florida to be, applied the significant relationship test to the contract before it. That court recognized that Sturiano was limited to automobile insurance policies and did not generally apply the lex loci contractus doctrine to conflicts questions involving other types of contracts. The Third District has also distinguished the holding of Sturiano in Gordon v. Russell, 561 So.2d 603 (Fla. 3d DCA 1990), and applied the law of Florida in construing a contract, notwithstanding the fact that the contract was entered into in New Jersey.
I would adopt the significant relationship test which is, as Justice Grimes stated in Sturiano, the emerging consensus of courts and legal scholars. Id. at 1130. See Section 188, Restatement (Second) of Conflict of Laws (1971).
I would also expand the majority’s public policy argument and apply it to the entire interpretation of the antenuptial agreement. Florida has a strong public policy of fairness in the dealings between spouses. Both our case decisions and statutes bear this out. Certainly if Florida’s strong public policy of protection of its citizens from inequitable insurance arrangements can avoid the applica *284 tion of a foreign state’s law, as was found in Gillen v. United Services Auto Ass’n, 300 So.2d 3 (Fla.1974), then I would contend we have an even greater interest in the protection of our residents concerning the domestic agreements they enter into.
A similar ease to the present one is found in Gustafson v. Jensen, 515 So.2d 1298 (Fla. 3d DCA 1987). In Gustafson an antenuptial agreement was executed in Denmark similar to the one at issue here. The agreement contained no provision for the wife. The parties moved to Florida where they resided until they divorced. During the marriage the husband tore up the agreement but contended in the later dissolution action that it was error not to uphold the agreement executed in Denmark. The trial court ruled that Florida law applied. The Third District held that the trial court was correct because under a principle of choice-of-laws doctrine, absent proof that foreign law is different from the law of Florida, the court is entitled to presume it is the same. In Gustafson the husband had failed to establish that Danish law was different from the law of Florida.
However, the court went on to state:
It should be remembered that the laws of other nations are enforced by Florida courts only to the extent called for under principles of comity. Where the foreign sovereign has no significant interest in the issue being adjudicated, there is no basis for the invocation of comity. The Florida Supreme Court has expressly held that the principles of comity will not apply where the state in which the contract in dispute was entered into has little or no interest in the matter or controversy. Gillen v. United Services Auto. Ass’n, 300 So.2d 3 (Fla.1974). Nor will comity be recognized where to do so would bring harm to a Florida citizen or would frustrate an established public policy of this state.
Id. at 1300. In the instant case, the antenup-tial agreement appears extremely unfair to the widow. Given the strong public policy of the state to be fair in relationships between husband and wife, it is incumbent on the Florida courts to evaluate this agreement under its laws regarding the enforcement of prenuptial agreements.
I have not analyzed the facts of this case as to whether the significant relationship test would result in the application of Florida law or that of Puerto Rico. The trial court did not engage in that analysis, and the record is not sufficiently developed on the necessary predicates to apply the doctrine. I would hold that the trial court should have applied the significant relationship test and the public policy test rather than the doctrine of lex loci contractus to determine whether Florida law should apply. I would remand to the trial court to make these determinations.